### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**ROY HARNESS, ET AL.**                                              **PLAINTIFFS**

**VS.**                                      **CIVIL ACTION NO. 3:17cv791-DPJ-FKB**

**DELBERT HOSEMANN, SECRETARY OF**
**STATE OF MISSISSIPPI**                                              **DEFENDANT**

### SECRETARY HOSEMANN'S MEMORANDUM OF AUTHORITIES
### SUPPORTING MOTION FOR CONSOLIDATION

This constitutional challenge to Mississippi's felon disenfranchisement laws should be consolidated with a virtually identical case filed against Secretary of State Delbert Hosemann. According to the plaintiffs here, their suit against Secretary Hosemann "is a challenge to certain portions of Section 241 of the Mississippi Constitution of 1890 that list specific crimes that were set forth in 1890 as crimes that forever disqualify a citizen from voting."[1] Not to be outdone, another plaintiff group recently asserted their own "facial challenges to Sections 241 and 253 of the Mississippi Constitution, as well as Sections 23-15-11 and 23-15-19 of the Mississippi Code" against the Secretary.[2]

Although the second set of plaintiffs candidly listed this case as "related" on their Civil Cover Sheet,[3] their second-filed suit was assigned to a different Court in this District and Division. Federal Rule 42 and Local Rule 42 are tailor-made for this instance. The cases should be consolidated for all purposes.

---

[1] [Dkt. 19 at p. 1].

[2] [*Hopkins v. Hosemann* Complaint at p. 36, Ex. A to Motion].

[3] [*Hopkins v. Hosemann* Civil Cover Sheet, Ex. B to Motion].



## FACTS

### The *Harness v. Hosemann* Felon Disenfranchisement Lawsuit

On September 28, 2017, the *Harness* plaintiffs initiated this lawsuit solely against Secretary Hosemann, in his official capacity. [Dkt. 1]. They allege the 1890 Mississippi Constitution's framers enacted Section 241's permanent felon disenfranchise provisions with discriminatory intent targeting African-Americans. [Dkt. 19 at pp. 1-2, 5-6]. Despite modifications to Section 241 over time, they contend the changes failed to absolve the section of the framers' alleged discriminatory intent. [*Id.* at pp. 6-13]. As a result, according to the *Harness* plaintiffs, the framers' original intent behind Section 241's permanent disenfranchisement provision, and a disproportionate effect on African-Americans, persist today and render it invalid under the Fourteenth and Fifteenth Amendments. [*Id.* at pp. 13-19]. They accordingly seek declaratory and prospective injunctive relief prohibiting Secretary Hosemann "from giving any force and effect" to most of Section 241's list of disenfranchising crimes. [*Id.* at pp. 20-21].

*Harness* is currently in the preliminary pre-trial stage. On November 20, Secretary Hosemann answered the original complaint. [Dkt. 12]. On March 6, 2018, the Court set a March 26 deadline for party joinder/amendments and other case management deadlines. [Dkt. 16]. As of this writing, only the party joinder/amendments deadline has passed.

On March 26, the *Harness* plaintiffs moved unopposed for leave to amend their complaint. [Dkt. 17]. On April 5, after the Court granted their motion, the *Harness* plaintiffs filed their amended complaint. [Dkt. 19]. The amendment added an additional plaintiff, and a contention that the State's felon disenfranchisement laws

violate both the Fourteenth and Fifteenth Amendments. Otherwise, the amended complaint asserts the same factual and legal theories, as well as the same request for relief as the original complaint. [*Compare* Dkt. 1 *with* Dkt. 19]. Secretary Hosemann currently has until April 19 to respond. *See* Fed. R. Civ. P. 15(a)(3).

### The *Hopkins v. Hosemann* Felon Disenfranchisement Lawsuit

On March 27, 2018, six plaintiffs filed a separate class lawsuit solely against Secretary Hosemann, in his official capacity, also challenging the State's felon disenfranchisement laws. The suit is filed in this District and Division, and currently styled *Hopkins, et al. v. Hosemann*, Civil Action No. 3:18cv188-CWR-LRA. [*See* Ex. A to Motion]. The *Hopkins* plaintiffs, like their *Harness* counterparts, allege Section 241 and the State's other felon disenfranchisement laws were enacted in 1890 to selectively strip African-Americans of their voting rights, the laws are effectively unchanged since 1890, and Section 241's felon voting "ban" works in tandem with other laws to illegally and disproportionately disenfranchise African-Americans and all affected convicted felons. [*Id.* at pp. 7-34].

Based on their purported Fourteenth Amendment race-based discrimination claims and other alleged causes of action, like the *Harness* plaintiffs, the *Hopkins* plaintiffs seek declaratory and prospective injunctive relief against Secretary Hosemann effectively re-writing Sections 241 and 253 of the Mississippi Constitution, and corresponding provisions of the Mississippi Code. [*Id.* at pp. 43-46].

Everyone knows the *Harness* and *Hopkins* suits are inextricably intertwined. According to *Hopkins*'s counsel, they sued to join "similar federal lawsuits in Mississippi, Alabama and Florida alleging that these states' arbitrary and discriminatory

vote-banning schemes violate the U.S. Constitution."[4] The lawyers also recently proclaimed that they "brought the case to compliment" the *Harness* suit and said "[w]e want to end felony disenfranchisement—and fighting alongside [*Harness*'s counsel] is an excellent way, we both think, to bring the fight."[5]

Immediately after filing, the *Hopkins* plaintiffs served Secretary Hosemann with process. As of this writing, no further substantive proceedings in *Hopkins* have occurred. *Hopkins* is in the same basic procedural posture as *Harness*. Secretary Hosemann's current deadline to respond to the *Hopkins* complaint is April 17. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

## ARGUMENT

Federal Rule of Civil Procedure 42 authorizes the Court to consolidate pending lawsuits "involving a common question of law or fact . . . [and] make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). In evaluating whether to consolidate two related lawsuits, the Court should consider the following factors:

> '(1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is a risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, (5) whether consolidation will conserve judicial resources, (6) whether consolidation will result in an unfair advantage, (7) whether consolidation will reduce the time for resolving the cases, and (8) whether consolidation will reduce the cost of trying the cases separately.'

---

[4] March 27, 2018 Press Release, *SPLC Sues to Restore Mississippi Citizens' Voting Rights* (copy attached as Ex. C to Motion).

[5] Jerry Mitchell, *Lawsuit: Mississippi Constitution still disenfranchising thousands*, THE CLARION-LEDGER, March 27, 2018 (copy attached as Ex. D to Motion).

-4-

***Crest Audio, Inc. v. QSC Audio Products, Inc.***, 2016 WL 3249217, at *2 (S.D. Miss. Mar. 4, 2016) (quoting ***In re Camp Arrowhead, Ltd.***, Civil Action No. SA-10-CV-170-XR (W.D. Tex. Mar. 8, 2010)).

Across-the-board, all eight factors favor consolidating *Harness* and *Hopkins*.

## I.   The Actions are Pending in the Same Judicial District.

Both *Harness* and *Hopkins* are pending in the Northern Division of this District. Consolidation is appropriate when "the cases proposed for consolidation are pending either before the same court for all purposes or before two different courts within the same judicial district." ***Mayfield v. American Auto. Ins. Co.***, 2003 WL 21250935, at *1 (N.D. Tex. May 27, 2003). *Harness* is the earlier filed action. Under Local Rule 42, "[t]he judge initially assigned the lower or lowest numbered action, even if that action has been dismissed, will be the judge before whom the action(s) will be tried." L.U.Civ.R. 42.

This factor favors consolidation.

## II.   Common Parties are Involved.

Secretary Hosemann is the sole named defendant in *Harness* and *Hopkins*. The plaintiffs are different in name, however, they assert overlapping claims and ultimately seek the same relief. The plaintiffs are virtually the same for consolidation purposes.

The *Harness* plaintiffs are convicted felons, who have served their sentences,[6] and seek declaratory and injunctive relief effectively nullifying the State's felon disenfranchisement laws. The *Hopkins* plaintiffs are likewise convicted felons, who also

---

[6] [Dkt. 19 at p. 4].

have fulfilled their sentences,[7] and demand declaratory and injunctive relief substantially similar to the *Harness* plaintiffs. The plaintiffs do not simply share the same characteristics, similar claims, and common litigation objectives. If the *Hopkins* plaintiffs have their way, they will represent the *Harness* plaintiffs' interests. *Hopkins* seeks to press claims on behalf of all current and future convicted felons who have completed their sentences and are disenfranchised under Mississippi law. [Ex. A to Motion at p. 35]. Should a *Hopkins* class be certified, the *Harness* plaintiffs would be swept into it.

Even setting aside the plaintiffs' common characteristics, differences in named plaintiffs among the two lawsuits ultimately do not militate against consolidation. Although the *Harness* and *Hopkins* plaintiffs differ in name, "consolidation is not limited to actions involving identical parties." **Attala Hydratane Gas, Inc. v. Lowry Tims Co.**, 41 F.R.D. 164, 165 (N.D. Miss. 1966). So long as the plaintiffs in each case assert common issues of fact and law, consolidation is appropriate. **Id.**; *see also* **LaCroix v. Marshall County**, 2009 WL 2244593, at *2 (N.D. Miss. July 27, 2009) (complete identity of parties unnecessary where substantial identity of parties and issues exists).

This factor favors consolidation.

### III. There are Common Questions of Law and Fact.

"Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid

---

[7] [Ex. A to Motion at pp. 4-7].

-6-

unnecessary costs or delay." ***St. Bernard General Hospital, Inc. v. Hospital Serv. Ass'n of New Orleans, Inc.***, 712 F.2d 978, 989 (5th Cir. 1983), *cert. denied*, 466 U.S. 970 (1984).

The factual cornerstone of both *Harness* and *Hopkins* is the 1890 Convention's alleged racially discriminatory intent in enacting the Mississippi Constitution's felon disenfranchisement provisions. In one form or another, both complaints contend the framers impermissibly targeted and unduly burdened African-Americans. And that discriminatory intent, so both sets of plaintiffs contend, continues in effect today. A side-by-side comparison of the pleadings lays bare the cases' numerous intertwined factual issues:

| *Harness* Allegations | *Hopkins* Allegations |
|---|---|
| "Section 241's list of disenfranchising crimes was an integral part of the overall effort to prevent African-Americans in Mississippi from voting." [Dkt. 19 at p. 6]. | "Mississippi's criminal disenfranchisement scheme was designed to selectively and permanently strip black citizens of their right to vote." [Ex. A to Motion at p. 7]. |
| "the list of disqualifying crimes adopted in 1890 that remains in § 241 today (with the exception of burglary) was chosen by the 1890 framers with the intent to discriminate against African-Americans and prevent them from voting. It is a vestige of the doctrine of white supremacy." [Dkt. 19 at p. 13]. | "The purpose of the 1890 Constitutional Convention was to concentrate political control in the hands of Mississippi's white voters." [Ex. A to Motion at pp. 7-8].<br><br>"The delegates enacted the lifetime voting ban to selectively and permanently disenfranchise black voters." [Ex. A to Motion at p. 9].<br><br>"discriminatory intent permeated the 1890 Constitution in its entirety" [Ex. A to Motion at p. 11]. |
| "A number of methods of African-American voter suppression were adopted by the framers of the 1890 Constitution, including literacy tests and poll taxes. One of those tools was contained in Section 241." [Dkt. 19 at p. 1]. | "One of the hallmark features of the 1890 Constitution was the lifetime voting ban included in Section 241, which established Mississippi's voter eligibility requirements. The lifetime voting ban state that a Mississippi citizen was eligible to vote only if he had never been convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy. A Mississippi citizen convicted of any of the enumerated crimes lost his right to vote forever." [Ex. A to Motion |

-7-

|  | at pp. 8-9 (internal quotes omitted)]. |
|---|---|
| "the list of disqualifying crimes adopted in 1890 that remains in § 241 today (with the exception of burglary) was chosen by the 1890 framers with the intent to discriminate against African-Americans and prevent them from voting. It is a vestige of the doctrine of white supremacy." [Dkt. 19 at p. 13]. | "The fundamental structure of Mississippi's criminal disenfranchisement scheme has not changed since 1890." [Ex. A to Motion at p. 11]. |
| "The 1950 and 1968 amendments did not remove the discriminatory taint from the actions of the 1890 constitutional convention." [Dkt. 19 at p. 18]. | "The list of disenfranchising offenses set forth in the lifetime voting ban of the 1890 Constitution has been amended twice: once in 1950 to eliminate burglary as a disenfranchising offense, and again in 1968 to add murder and rape. Aside from these changes, the lifetime voting ban in effect today is identical to the 1890 version." [Ex. A to Motion at pp. 11]. |
| "The Mississippi Attorney General's Office has concluded the word 'theft' in Section 241 encompasses a number of crimes, including receiving stolen property, felon shoplifting, multiple types of larceny, unlawful taking of a motor vehicle, extortion, carjacking, robbery, and armed robbery. He also has concluded the term "false pretenses" in Section 241 includes the crime of felony bad check. Thus, people convicted of those subsidiary crimes have also been deemed to be disfranchised and are not allowed to vote." [Dkt. 19 at p. 19]. | "Mississippi has . . . adopted a number of changes to the interpretation and application of the lifetime voting ban. Although the Mississippi Constitution lists only ten disenfranchising offenses, the Attorney General has opined that there are twelve additional offenses that fall within the scope of the lifetime voting ban: armed robbery, extortion, felony bad check, felony shoplifting, larceny, receiving stolen property, robbery, timber larceny, unlawful taking of a motor vehicle, statutory rape, carjacking, and larceny under lease or rental agreement. These additional disenfranchising offenses are listed on Mississippi's voter registration application." [Ex. A to Motion at pp. 12-13]. |
| "The disqualification of people convicted of crimes that were listed in Section 241 in 1890 and that remain in Section 241 today, and their subsidiary crimes, has a discriminatory impact. For example, according to the 2010 census, 35% of Mississippi's population 18 and over is African-American. Approximately 60% of the people convicted of those disqualifying crimes in Mississippi state courts between 1994 and the present are African-American." [Dkt. 19 at p. 19]. | "Black citizens are disproportionately impacted by Mississippi's criminal disenfranchisement scheme. Although only 36.5% of the state's voting age population of citizens are black, 59% of individuals convicted of disenfranchising offenses between 1994 and 2017 were black." [Ex. A to Motion at p. 22].<br><br>"In recent decades, black voting-age Mississippians have been disenfranchised at over twice the rate of white voting-age Mississippians. Between 1994 and 2017, a substantially higher percentage—*more than double*—of Mississippi's black voting age population was disenfranchised as compared with the state's white voting age population." [Ex. A to Motion at p. 23]. |
| "A number of methods of African-American voter suppression were adopted by the framers of the 1890 Constitution, including literacy tests and poll taxes. One of those tools was contained in Section 241." [Dkt. 19 at p. 1].<br><br>"the list of disqualifying crimes adopted in 1890 that | "The lifetime voting ban and the suffrage bill provision of the Mississippi Constitution were enacted as part of the 1890 Constitution, which was carefully crafted to concentrate political power in white voters without overtly violating the Fifteenth Amendment." [Ex. A to Motion at p. 42]. |

-8-

| | |
|---|---|
| remains in § 241 today (with the exception of burglary) was chosen by the 1890 framers with the intent to discriminate against African-Americans and prevent them from voting. It is a vestige of the doctrine of white supremacy." [Dkt. 19 at p. 13]. | |
| Section 241's "quirky collection of crimes" were adopted "because the 1890 framers believed them to be disproportionately committed by African-Americans and they chose to obstruct the franchise by the negro race by targeting the offenses to which its weaker members were prone." [Dkt. 19 at p. 5 (internal quotes omitted)]. "Section 241's list of disenfranchising crimes was an integral part of the overall effort to prevent African-Americans in Mississippi from voting." [Dkt. 19 at p. 6]. | "The lifetime voting ban targeted crimes believed to be disproportionately committed by black Mississippians. The suffrage bill provision provided a mechanism for restoring voting rights lost pursuant to the lifetime voting ban, but in a manner designed to allow the continued denial of voting rights to black citizens. Devoid of objective standards, the suffrage bill enabled legislators to cloak discrimination in discretion." [Ex. A to Motion at p. 42]. |
| "The disqualification of people convicted of crimes that were listed in Section 241 in 1890 and that remain in Section 241 today, and their subsidiary crimes, has a discriminatory impact. For example, according to the 2010 census, 35% of Mississippi's population 18 and over is African-American. Approximately 60% of the people convicted of those disqualifying crimes in Mississippi state courts between 1994 and the present are African-American." [Dkt. 19 at p. 19]. | "The suffrage bill provision has had a disproportionate impact on the state's black citizens. While black citizens represent only 36.5% of Mississippi's voting age population of citizens, approximately 58% of Mississippi's disenfranchised citizens who have completed their sentences for convictions of disenfranchising offenses between 1994 and 2017 are black. These black citizens have not regained their voting rights and they have no realistic hope of ever obtaining the restoration of their right to vote by suffrage bill." [Ex. A to Motion at pp. 42-43]. |

Not only do the *Harness* and *Hopkins* plaintiffs duplicate many factual assertions, their legal claims also significantly overlap. Both plaintiff groups contend Section 241 is unconstitutional. The *Hopkins* plaintiffs assert a broader array of legal theories, and attack multiple State constitutional and Code provisions. Nevertheless, the two cases involve the same overarching, and identical, legal theory. All the plaintiffs contend Section 241 was enacted with racially discriminatory intent, and persists in racially discriminatory effect, in violation of the Fourteenth Amendment's Equal Protection Clause. [Dkt. 19 at pp. 19-20; Ex. A to Motion at pp. 42-43].

With the significant overlap of both common issues of fact and law, this factor

favors consolidation.

### IV. There is No Risk of Prejudice or Confusion, but if the Cases are Tried Separately, the Risk of Inconsistent Adjudications of Factual and Legal Issues Would Exist.

Nobody can credibly claim consolidation here will create unfair prejudice or confusion. Both cases are essentially in the same pretrial procedural posture. And after consolidation, the various *Harness* and *Hopkins* plaintiffs will still retain, and assert, their various rights. *See* **International Fid. Ins. Co. v. Sweet Little Mexico Corp.**, 665 F.3d 671, 676 (5th Cir. 2011) (consolidation "does not merge the suits into a single cause, change the rights of the parties, or make those who are parties in one suit parties in another"); **Miller v. U.S. Postal Serv.**, 729 F.2d 1033, 1036 (5th Cir. 1984) ("Consolidation does not so completely merge the two cases as to deprive a party of any substantial rights that he may have had if the actions had proceeded separately, for the two suits retain their separate identities and each requires entry of a separate judgment."). Meanwhile, failing to consolidate the cases would create a risk of inconsistent factual and legal adjudications, as well as potential prejudice to Secretary Hosemann.

As recounted above, the *Harness* and *Hopkins* plaintiffs share numerous factual allegations and legal claims. Those issues could be decided differently by two different courts if consolidation is not ordered.

Also significant, the plaintiff groups' demanded relief further illustrates the risk of separate adjudications by two different courts. Consolidation is favored where separate proceedings would risk inconsistent results. *See* **Entergy Mississippi, Inc. v. Marquette Transp. Co., LLC**, 2013 WL 3778436, at *1 (S.D. Miss. July 17, 2013).

-10-

A palpable risk of inconsistent results would exist absent consolidation. For example, if the *Harness* plaintiffs succeed, through declaratory and injunctive relief against Secretary Hosemann, they want the Court to effectively re-write the Constitution's felon disenfranchisement provisions in Section 241 as follows:

> Every inhabitant of this state . . . and who has never been convicted of murder, [or] rape~~, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy~~, is declared to be a qualified elector . . . .

[Dkt. 19 at p. 21]. The *Hopkins* plaintiffs, for their part, apparently seek declaratory and injunctive relief prescribing their own new form of Section 241:

> Every inhabitant of this state . . . and who has ~~never~~ been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, [following the completion of the terms of his or her sentence,] is declared to be a qualified elector . . . .

[Ex. A to Motion at p. 44]. Assuming only for argument's sake that the two plaintiff groups prevail, only one court could likely succeed in harmonizing their demands and prospectively enforcing its orders. That, in and of itself, justifies consolidation.

The *Harness* and *Hopkins* plaintiffs' claims should be tried together, if for no other reason, to reach a consistent result. This factor favors consolidation.

## V.   Consolidation Will Conserve Judicial Resources.

Consolidation is appropriate when it "will serve to reduce the costs and expenses of the parties and will better utilize judicial time and resources." ***Branch Banking and Trust Co. v. Price***, 2011 WL 5403403, at *3 (S.D. Miss. Nov. 8, 2011).

Consolidating *Harness* and *Hopkins* will conserve judicial resources and avoid duplication of the same legal issues being tried by two different courts. The plaintiffs'

-11-

allegations of racial discrimination, among other things, are identical and turn upon the same factual contentions in both cases. It would conserve judicial resources for one court to decide these issues, as opposed to duplicate efforts in two courts.

Given their near identical challenges and relief sought, many of the same motions, arguments, hearings and the trials will be presented to the Court in both *Harness* and *Hopkins*. Consolidation is favored if it will eliminate duplication in matters presented to the court. *See* **Baudoin v. Stogner**, 2012 WL 315976, at *1 (S.D. Miss. Feb. 1, 2012).

Further, as explained, both sets of plaintiffs seek prospective remedial relief against Secretary Hosemann which substantially overlaps in effect and degree. Assuming that any of the plaintiffs' demanded relief is awarded, consolidation will conserve judicial resources and eliminate the possibility of conflicts between courts, in that only one court would craft the relief and be responsible for adjudicating future compliance issues (if any).

This factor favors consolidation.

## VI. Consolidation Will Not Result in an Unfair Advantage.

Neither the *Harness* and *Hopkins* plaintiffs, nor Secretary Hosemann, will gain any unfair advantage through consolidating the proceedings. To the contrary, as explained above, the parties and the Court will gain the advantage of trying the plaintiffs' common issues of law and fact tried together and reach a singular result, as opposed to the possibility of inconsistent judgments, and competing relief awarded (if any) against Secretary Hosemann.

This factor favors consolidation.

### VII. Consolidation Will Reduce the Time for Resolving the Cases.

Both *Harness* and *Hopkins* are in the initial pre-trial pleading stage. The *Harness* plaintiffs recently amended their complaint, and the *Hopkins* plaintiffs just filed their complaint. In each case, as of this writing, Secretary Hosemann's responsive pleadings are not yet due. The cases can easily follow the same case management track. Consolidation will allow one court to efficiently manage the litigation, and simultaneously move both cases to an ultimate resolution in a timely fashion.

This factor favors consolidation.

### VIII. Consolidation Will Reduce the Cost of Trying the Cases Separately.

Consolidating the two cases will reduce the parties' litigation costs, as well as the Court's costs, because the common factual and legal issues will be presented to one Court, as opposed to duplicating efforts between two courts. Secretary Hosemann is the sole named defendant in both cases, therefore, the Secretary's costs (which are borne by all state taxpayers) will substantially be reduced by only trying the cases' common issues one time.[8] The plaintiffs' costs will likewise obviously be reduced by trying the cases together.

This factor favors consolidation.

### CONCLUSION

Rule 42 and Local Rule 42, and every possible consideration thereunder, fully support consolidating these cases. Secretary Hosemann therefore requests an order

---

[8] The Secretary's, and ultimately the State's, costs may include more than simply defense costs. For example, the *Harness* and *Hopkins* plaintiffs have each brought their claims under Section 1983 and, presumably, if they prevail, will attempt to force the State to pay their attorneys' fees and costs under Section 1988.

consolidating *Hopkins, et al. v. Hosemann*; Civil Action No. 3:18cv188-CWR-LRA with this lawsuit for all purposes.

THIS the 5th day of April, 2018.

           Respectfully submitted,

           DELBERT HOSEMANN,
           SECRETARY OF STATE OF MISSISSIPPI

BY:  JIM HOOD, ATTORNEY GENERAL

By:  S/Justin L. Matheny
    Justin L. Matheny (Bar No. 100754)
    Office of the Attorney General
    P.O. Box 220
    Jackson, MS 39205
    Telephone: (601) 359-3680
    Facsimile: (601) 359-2003
    *jmath@ago.state.ms.us*

    *Counsel for Defendant Delbert Hosemann,*
    *Secretary of State of Mississippi*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been electronically filed via the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date. I further certify the foregoing document has been filed electronically via the Court's ECF system in *Hopkins, et al. v. Hosemann*, USSD Civil Action No. 3:18cv188-CWR-LRA, under cover of a Notice of Filing, and thereby served on all counsel of record who have entered their appearance in that action.

THIS the 5th day of April, 2018.

           S/Justin L. Matheny
           Justin L. Matheny